Filed in Open Court
07/24/2025
Skyler B. O'Hara
By _M. Ganott_
Deputy

# UNITED STATES DISTRICT COURT

## District of Kansas

(Kansas City Docket)

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**                                  **CASE NO. 23-20063-DDC-ADM**

**RICHARD WAYNE MUELLER,**

**Defendant.**

## PLEA AGREEMENT

The Fraud Section of the Criminal Division of the Department of Justice (the "Government") and RICHARD WAYNER MUELLER (hereinafter referred to as "Defendant") enter into the following agreement:

1.    Defendant agrees to plead guilty to Count 1 of the Indictment, which charges Defendant with conspiracy, in violation of Title 18, United States Code, Section 1349, to commit: wire fraud, in violation of Title 18, United States Code, Section 1343, and honest services wire fraud, in violation of Title 18, United States Code, Section 1346.  Defendant agrees and understands that this charge involves Defendant's conduct from in or around January 2011 through in or around January 2021, during which time Defendant and his co-conspirator, Michael Clinesmith, conspired and agreed to defraud Company 1 of its money and property and of the honest services of its employee, Clinesmith, by, among other things, misleading Company 1 about who was performing gage design work and the capabilities of Defendant's company to perform complex gage design work, and by paying bribes and kickbacks to Clinesmith.  The plea entered by Defendant pursuant to this agreement resolves Defendant's federal criminal liability in the District of Kansas from Defendant's criminal conduct described in the Factual Proffer contained

2

herein, as known to the United States Attorney's Office for the District of Kansas and the Fraud Section of the Criminal Division of the Department of Justice, as of the date of this plea agreement.

2.    Defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). Defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. Defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed and may raise or lower that advisory sentence under the Sentencing Guidelines. Defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, Defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that Defendant may not withdraw the plea solely as a result of the sentence imposed.

3.    Defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to twenty (20) years, followed by a term of supervised release of up to three (3) years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to double the gross gain or gross loss, or $250,000 (whichever is greater), and must order forfeiture and restitution.

3

4.      Defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on Defendant.  Defendant agrees that any special assessment imposed shall be paid at the time of sentencing.  If Defendant is financially unable to pay the special assessment, Defendant agrees to present evidence to the Government and the Court at the time of sentencing as to the reasons for Defendant's failure to pay.

5.      Defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case.  This may include information concerning his background, character, and conduct, including the entirety of his criminal activities.  Defendant understands these disclosures are not limited to the count to which he is pleading guilty.  The United States may respond to comments he or his attorney makes, or to positions he or his attorney takes, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this Plea Agreement.  Defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

6.      The United States agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to Defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon Defendant's recognition and affirmative and timely acceptance of personal responsibility.  If, at the time of sentencing, Defendant's offense level is determined to be 16 or greater, the United States will file a motion requesting an additional one-level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that Defendant has assisted authorities in the investigation or prosecution of Defendant's own

4

misconduct by timely notifying authorities of Defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.   The United States, however, will not be required to make this motion and this recommendation if Defendant: (1) fails or refuses to make a full, accurate, and complete disclosure to the government of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to sentencing and after entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7.      The United States and Defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

      a.   <u>Base Offense Level</u>:   That Defendant's base offense level is 8, pursuant to Sections 2B1.1(c)(3) and 2B4.1.

      b.   <u>Specific Offense Characteristics</u>:   That the value of the bribe or improper benefit conferred under Sentencing Guidelines Sections 2B4.1(b)(1) and 2B1.1(b)(1) is $1,233,900.

      c.   <u>Forfeiture</u>:   Defendant has no assets subject to forfeiture.

8.      The United States and Defendant stipulate to, and agree not to contest, the facts in the following Factual Proffer, and stipulate that such facts, in accordance with Rule 11(b)(3) of the Federal Rules of Criminal Procedure, provide a sufficient factual basis for the plea of guilty in this matter.   Because the factual basis set forth in the Factual Proffer has the limited purpose of

5

supporting Defendant's guilty plea to the charge cited in paragraph 1, the Factual Proffer does not purport to represent all facts and circumstances relating to Defendant's participation.    The Factual Proffer is as follows:

If this case had proceeded to trial, the United States would prove beyond a reasonable doubt that beginning in or around 2011 and continuing through in or around January 2021, Defendant knowingly conspired and agreed with Michael Clinesmith and others to defraud Company 1 of its money and property and its right to the honest services of Clinesmith.

Company 1 operated and managed the Kansas City National Security Campus (KCNSC), located in Kansas City, MO, on behalf of the Department of Energy's National Nuclear Security Administration.    Company 1, through its work at KCNSC, was responsible for manufacturing non-nuclear components used in the United States' nuclear weapon stockpile.    Among other things, Company 1 manufactured and procured gages—mechanical devices that were specially designed and manufactured to measure the components of nuclear weapon products to ensure the end products met design standards.    Clinesmith was an experienced and long-tenured gage engineer at Company 1 who exercised significant control and influence over the gage procurement process at Company 1.    Gage engineers worked with Company 1 Buyers—employees responsible for purchasing gages from vendors—to place purchase orders with vendors for gage-design and - build subcontracts.

Mueller Machine & Tool ("MMT") was a machining and tooling shop owned by the Mueller family and located in St. Louis, MO.    MMT manufactured, among other things, gages, machines, tools, plastic molds, and aluminum casings, for both private-sector clients and facilities operated on behalf of the Department of Energy.    Specifically, MMT contracted with Company 1

6

to design and build gages for use at the KCNSC. Defendant held various roles at MMT, one of which was supervising and managing the gage department.

At least as early as 2011, Defendant and Clinesmith agreed to defraud Company 1 of its money and property by fraudulently misrepresenting MMT's gage-design capabilities so that Company 1 would award gage design and build subcontracts to MMT. To do so, Clinesmith represented to others at Company 1, including Company 1 Buyers, that MMT was qualified to perform highly complex gage design work. Defendant, likewise, represented to Company 1 that MMT was capable of designing highly complex gages and bid on design subcontracts for such work. In fact, however, MMT was not capable of performing complex gage design work.

Defendant and Clinesmith agreed that Defendant, on behalf of MMT, would bid on gage design subcontracts with Company 1 that it could not perform and then pay Clinesmith to perform the work without Company 1's knowledge. Defendant knew that MMT could not in fact perform this work and Defendant intended to mislead Company 1 and fraudulently obtain its money by submitting bids for the work. At times, Clinesmith would personally send requests for quotes on behalf of Company 1 to Defendant and MMT for gage design and build subcontracts. At other times, Clinesmith would direct others at Company 1 to send gage design and build subcontracts to Defendant and MMT. Clinesmith would then use interstate wires to communicate with Defendant and tell him how much to bid for the gage design subcontract. At times, Clinesmith would tell Defendant the total budget that Company 1 had allotted for the design and build of a gage so that Defendant could structure his bid to fall within that budget. In some instances, Defendant would add a "markup" to his gage design bid that MMT would retain, with Clinesmith's knowledge and approval, even though MMT was not performing any of the design work. Clinesmith, in his capacity at Company 1, then approved Defendant's gage design and build bids as fair and

7

reasonable, without disclosing to Company 1 that he had set the prices and he was being paid by MMT with Defendant's approval.

After Clinesmith had completed a gage design, he would send it via interstate wires to Defendant. Defendant and others at MMT would then submit the design to Company 1 and pass it off as their own work. Clinesmith, in his role at Company 1, would then review his own designs and approve them, triggering payment to MMT, which in turn paid Clinesmith.

Defendant and Clinesmith also agreed to defraud Company 1 of its right to the honest services of its employee, Clinesmith, by paying bribes and kickbacks to Clinesmith. More specifically, Defendant paid Clinesmith to perform design work that was less complex and that MMT could have performed on its own. Defendant did so because he knew that Clinesmith had authority and control over which vendor would receive a gage design and/or build subcontract. Defendant intended to influence Clinesmith and induce him to award gage design and build subcontracts to MMT by paying Clinesmith to perform both complex and simpler gage design work. Defendant knew and understood that paying Clinesmith to do gage design work would ensure that Clinesmith would award and cause others at Company 1 to award gage design and build subcontracts to MMT. In return for the payments from MMT, Clinesmith continued to award gage design and build subcontracts to MMT.

Defendant knew that MMT was precluded from subcontracting work to anyone without Company 1's express authority and he knew that paying Clinesmith, as an employee of Company 1, was expressly prohibited without disclosure to and approval from Company 1. Every gage subcontract with Company 1 that Defendant signed on behalf of MMT contained a clause stating that MMT could not subcontract any of the work without the prior written approval of Company 1. In addition, starting at least as early as 2011, MMT received a letter from Company 1 annually

8

advising MMT of its obligation to not provide anything of value to any Company 1 employee. The letter explained that doing so could constitute a violation of the Anti-Kickback Enforcement Act of 1986 and result in MMT being disqualified from doing further business with Company 1.

Defendant and Clinesmith both took steps to conceal their illicit relationship from Company 1. For instance, when discussing Clinesmith's work for MMT, Defendant and Clinesmith communicated only by phone or using Clinesmith's personal email address. When approached by law enforcement officers during the course of the investigation, Defendant lied about his conduct. He told law enforcement that Clinesmith had only performed one or two projects a year for MMT, when in fact he had performed over 150 gage design subcontracts for MMT during the course of the agreement. He also lied about his understanding of Clinesmith's authority and control at Company 1 and his role in approving MMT's kickbacks to Clinesmith. Subsequently, during a proffer with government counsel and law enforcement, Defendant continued to minimize his conduct and role in the offense.

In total, MMT paid Clinesmith over $1.2 million in order to fraudulently obtain Company 1's money and property in the form of gage design and build subcontracts and to influence and induce Clinesmith to award and cause others to award such contracts to MMT.

9.      In the event that for any reason Defendant withdraws from this agreement prior to or after pleading guilty to the charge identified in paragraph 1 above, Defendant agrees and understands that he will forego the benefits and concessions contained in this plea agreement, and waive any protection afforded by Section 1B1.8 of the Sentencing Guidelines, as well as any protection afforded by Federal Rules of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Defendant further understands that in the event that for any reason he does not plead guilty, the Factual Proffer and any other statements made previously by Defendant under this agreement

9

or as part of any plea discussions, will be fully admissible against him in any civil or criminal proceedings, notwithstanding any prior agreement with the Government.

10.    Defendant understands that by pleading guilty in this case Defendant agrees to waive certain rights afforded by the Constitution of the United States and/or by statute or rule. Defendant agrees to forego the right to any further discovery or disclosures of information not already provided at the time of the entry of his guilty plea.    Defendant also agrees to waive, among other rights, the right to be indicted by a Grand Jury, the right to plead not guilty, and the right to a jury trial.    If there were a jury trial, Defendant would have the right to be represented by counsel, to confront and cross-examine witnesses against him, to challenge the admissibility of evidence offered against him, to compel witnesses to appear for the purpose of testifying and presenting other evidence on his behalf, and to choose whether to testify.    If there were a jury trial and Defendant chose not to testify at that trial, Defendant would have the right to have the jury instructed that his failure to testify could not be held against him.    Defendant would further have the right to have the jury instructed that Defendant is presumed innocent until proven guilty, and that the burden would be on the United States to prove his guilt beyond a reasonable doubt.    If Defendant were found guilty after a trial, Defendant would have the right to appeal his conviction. Defendant understands that the Fifth Amendment to the Constitution of the United States protects Defendant from the use of self-incriminating statements in a criminal prosecution.    By entering a plea of guilty, Defendant knowingly and voluntarily waives or gives up his right against self-incrimination.

11.    Defendant acknowledges discussing with you Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea

10

proceedings if a guilty plea is later withdrawn.  Defendant knowingly and voluntarily waives the rights that arise under these rules in the event Defendant withdraws his guilty plea or withdraws from this Agreement after signing it.

12.    Defendant also agrees to waive all constitutional and statutory rights to a speedy sentence and agrees that the plea of guilty pursuant to this Agreement will be entered at a time decided upon by the parties with the concurrence of the Court.  Defendant understands that the date for sentencing will be set by the Court.

13.    Defendant agrees to waive, insofar as such waiver is permitted by law, the right to appeal the conviction in this case on any basis, including but not limited to claim(s) that (1) the statute to which Defendant is pleading guilty is unconstitutional, and (2) the admitted conduct does not fall within the scope of the statute.  Defendant understands that federal law, specifically 18 U.S.C. § 3742, affords defendants the right to appeal their sentences in certain circumstances. Defendant also agrees to waive the right to appeal the sentence in this case, including but not limited to any term of imprisonment, fine, forfeiture, award of restitution, term or condition of supervised release, authority of the Court to set conditions of release, and the manner in which the sentence was determined, except to the extent the Court sentences Defendant above the statutory maximum or guidelines range determined by the Court.   In agreeing to this waiver, Defendant is aware that his sentence has yet to be determined by the Court.  Realizing the uncertainty in estimating what sentence the Court ultimately will impose, Defendant knowingly and willingly waives his right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the Government in this Agreement.  Notwithstanding the above agreement to waive the right to appeal the conviction and sentence, Defendant retains the right to appeal on the basis of

11

ineffective assistance of counsel, but not to raise on appeal other issues regarding the conviction or sentence.

14.    Defendant also waives any right to challenge the conviction entered or sentence imposed under this Agreement or otherwise attempt to modify or change the sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 or Federal Rule of Civil Procedure 60(b), except to the extent such a motion is based on (1) newly discovered evidence; (2) a claim that Defendant received ineffective assistance of counsel; or (3) a claim of prosecutorial misconduct. Defendant reserves the right to file a motion brought under 18 U.S.C. § 3582(c).

15.    Defendant understands and agrees that, if after entering this Agreement, Defendant fails specifically to perform or to fulfill completely each and every one of Defendant's obligations under this Agreement, or engages in any criminal activity prior to sentencing, Defendant will have breached this Agreement. In the event of such a breach: (a) the Government will be free from its obligations under this Agreement; (b) Defendant will not have the right to withdraw the guilty plea; (c) Defendant will be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; and (d) the Government will be free to use against Defendant, directly and indirectly, in any criminal or civil proceeding, all statements made by Defendant and any of the information or materials provided by Defendant, including such statements, information and materials provided pursuant to this Agreement or during the course of any debriefings conducted in anticipation of, or after entry of, this Agreement, whether or not the debriefings were previously characterized as "off-the-record" debriefings, and including Defendant's statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

12

16.     Defendant understands and agrees that the Government shall be required to prove a breach of this Agreement only by a preponderance of the evidence, except where such breach is based on a violation of federal, state, or local criminal law, which the Government need prove only by probable cause in order to establish a breach of this Agreement.

17.     Nothing in this Agreement shall be construed to permit Defendant to commit perjury, to make false statements or declarations, to obstruct justice, or to protect Defendant from prosecution for any crimes not included within this Agreement or committed by Defendant after the execution of this Agreement.   Defendant understands and agrees that the Government reserves the right to prosecute Defendant for any such offenses.   Defendant further understands that any perjury, false statements or declarations, or obstruction of justice relating to Defendant's obligations under this Agreement shall constitute a breach of this Agreement.   In the event of such a breach, Defendant will not be allowed to withdraw his guilty plea.

18.     The parties agree and understand that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and unless subsequently supplemented in writing with the joint approval of the parties, this Plea Agreement embodies each and every term of the agreement between the parties.


                                        LORINDA I. LARYEA
                                        ACTING CHIEF, FRAUD SECTION

Date:  7/24/25          By:  _____
                                        Andrew Jaco, Trial Attorney

Date:  7/24/25          By:  _____
                                        Thomas Johnson
                                        Attorney for Defendant

13

Date: ___7-21-25___          By: _____

Richard Mueller
Defendant